Staples J.
delivered the opinion of the court.
This is an action of debt brought in the Circuit court of Roanoke county, upon a writing obligatory. The instrument is joint and several, and purports to have been executed by five persons; process was issued against all the parties; but by direction of the plaintiff it was not served upon William Gish, whose name is first upon the bond as obligee. The declaration was filed, common order entered, and regularly confirmed *422 at rules. At the next term thereafter, all the defendants pleaded usury, and three of them severally filed pleas of non est faeium. Upon these latter pleas verdict and judgment were rendered for the three defendants. The jury not agreeing upon the issue made upon the plea of usury, were discharged, and, the cause was continued as to the defendant Bush. At a subsequent term of the court a verdict was rendered for the plaintiff against Bush, upon the plea of usury, for the entire debt claimed in the declaration. A motion was thereupon made by him for a new trial, which was overruled. He then moved in arrest of judgment, which motion was also overruled, and judgment given upon the verdict.
The correctness of that judgment is now to be considered. The errors assigned will be examined in the order in which they are presented in the proceedings. And first, it is insisted that upon a joint and several obligation the plaintiff may proceed jointly against all the parties, or severally against each. If he elects to sue more than one, he must proceed against all, and not any intermediate number. That here the plaintiff having elected to sue more than one, was bound to proceed against all; and yet by his direction one of the defendants was not served with process; and it is claimed that this precludes a judgment against any.
In support of this objection the case of Shields v. Oney, 5 Munf. 550, is much relied on. That was a suit against two partners, and by the direction of the plaintiff process was served upon one only. On the trial the defendant demurred to the evidence; and his demurrer being overruled he moved in arrest of judgment, upon the ground of the non-joinder; which motion was also overruled. This court held that the proceedings were all erroneous; that the plaintiff him *423 self having directed the writ not to be served upon one of the defendants, a plea in abatement by the other was unnecessary.
This is a very strong authority, and if the facts in the two cases were the same, it would, of course, be conclusive of this. In the present ease, it appears, however, that the defendant. Bush, appeared and pleaded in bar at the August term—the jury not agreeing, the case was continued as to him. At the next succeeding term it was continued on his motion, and at the next term it was again continued. During all this time the defendant was as well aware of the alleged irregularity as he is now; for it plainly appeared on the face of the proceedings. He did not move to remand the case to the rules; he did not complain of the defect in any form. After the rendition of the verdict against him, he moved in arrest of judgment, assigning various grounds of error; but this objection was not made or even distantly intimated. It was first suggested in the petition for an appeal, when the defect was without remedy by the plaintiff, or by the court which tried the ease.
According to a well settled rule of pleading, an objection for the non-joinder of a coobligor must be taken by plea in abatement. If not so taken, the objection is considered as waived. Such a plea is unnecessary where the plaintiff directs the process not to be served upon one of the parties; but the defendant may, if he pleases, waive all objection to this irregularity. He may for good reasons prefer to waive it; and I think he should be held to have done so when he wholly fails to raise the point in the court in which the error can be explained or corrected. Had this objection been made in the Circuit court, the plaintiff might readily have answered it. The defendant has *424 himself furnished the answer. In his motion in arrest of judgment, entered upon the record, he states that "neither he nor William Gish, at the time of the institution of the suit, were residents of the county of Eoanoke, or since have been residents of said county; hut at that time William Gish had fled from the country, having previously to 'his flight resided in the county of Bedford.”
This fact was no doubt well known to the court, to the counsel, and to all the parties. It fully explains why the direction was giv'en by the plaintiff not to serve the process upon William Gish, and why the objection was not taken at the time by the defendant. If no such direction had been given, the process would have been returned, “ bTo inhabitant” as to Gish, and the suit would have abated as to him. And this perhaps would have been the more regular course: but we are now considering the question in an appellate court. We are now asked to reverse the judgment and all the proceedings, because, by the direction of the plaintiff, process was not served upon one of the defendants, when it appears by the defendant’s own showing that this direction was wholly immaterial, and no such service could by possiblity have been had. Three of the defendants were discharged upon the pleas of non est factum. This occurred fifteen 3^ears ago. Where these parties now are, whether living or dead, it is impossible to tell. If we sustain this objection, we cannot enter judgment for the defendant Bush, as is contended. All that we could do under the circumstances would be to set aside all the proceedings as to all the defendants, and remand the cause, in order to afford the plaintiff an opportunity of issuing new process against William Gish, or of showing why the original process was not served upon him. That he *425 would show this very clearly, that he would make it •appear that Gish had fled the country, and was not an inhabitant of the state when the suit was instituted, it is impossible for a moment to doubt. And after all this further expense and litigation the case would be in the precise condition it is now with respect to the pleadings, and was in fifteen years ago.
These considerations serve abundantly to show the wisdom of the rule requiring objections of this character to be taken certainly at some stage of the proceedings in the coui’t below. And if no such rule existed, we are fortunately furnished by the defendant himself with the facts as they doubtless appeared in the court below, and which remove all objections to the alleged irregularity.
The next assignment of error to be considei-ed pi’esents the main question in the case. It is, whether in a joint action ex contractu against several defendants, some of whom are dischai’ged by the verdict of the jui’y, upon grounds which show they wei’e not pai’ties to the conti’act, the plaintiff can have judgment against those who are parties. It is conceded that such a recovery is not authorized by the rales of the common law. The almost universally recognized doctrine is, that in an action against several defendants on a joint contract plaintiff cannot recover judgment against part of them; he must have a joint judgment against all, or he cannot have it against any. If the contract be several as well as joint, the action must be against all the obligees jointly or against one of them singly, and not against any intermediate number’. If the plaintiff elects to proceed against all, the same consequences ensue as» in an action on a joint contract; he must have judgment against all or none. Taylor v. Beck, 3 *426 Rand. 816; Baber v. Cook, 11 Leigh 606; 3 Rob. Pram 100.
If these rules of the common law .are in force in Virginia, it is conceded that the plaintiffs cannot have judgment in this case against the defendant. It is claimed however, that they have been changed by statute. The provision relied upon is the following: “In an action founded on contract, against two or more defendants, although the plaintiff may be barred as to one or more of them, yet he may have judgment against any other or others of the defendants against whom he would have been entitled to recover if he had sued them only.” Code of 1860, chap. 177, sec. 19.
This section was first enacted at the revisal of' 1849-’50. It is claimed by the counsel for the plaintiff', that under the operation of this ■ provision, the plaintiff in a joint action on contract against several defendants, may have judgment against part of them although the others are acquitted upon grounds which go to the denial of the joint contract stated in the declaration.
On the other hand, it is insisted for the defendant that the statute does not apply to a case in which the right of action never existed as to a part of the defendants; that the legislature could never have intended to authorize the plaintiff to declare upon one contract and recover upon another; that the sole design of the enactment was to reach those cases in which the contract is proved as laid, but by reason of' some personal disability, such as infancy, or some subsequent discharge, such as bankruptcy, personal to him who pleads it, the plaintiff’s action is barred as to pai’t of the defendants. In these and like cases it is said that the statute applies, and although the action *427 is barred as to part, judgment may be rendered against the others.
The provision now under consideration has been before this court in two cases; and although the precise question arising here was not decided in either of them, the language of the judges indicates a manifest disposition to give the statute an enlarged and liberal interpretation. The first case is that of Steptoe v. Read, 19 Gratt. 1. That was an action of assumpsit against two as partners, alleging a joint contract. One of the defendants, Quarles, was offered as a witness to prove that he alone was liable, and that Steptoe, the other defendant, was no party to the contract. It was very clear that at common law Quarles was incompetent, because, in defeating a recovery as to Steptoe, he defeated it as to himself, upon the plain principle that in a joint action against several there can be but one final judgment, which must be for or against all the defendants. It was insisted, however, that the statute removed this difficulty in authorizing a judgment against some of the defendants, although the plaintiffs may be barred as to others. Judge Joynes conceded that under the statute Quarles was competent to prove that Steptoe was no party to the contract, “ which loas a defence personal to him,” Steptoe. The learned counsel says this was a mere concession made by Judge Joynes for the sake of the argument. This may be so. But if, as contended by the learned counsel, the rule of the common law which requires the joint contract to be proved as laid is not changed by the statute, it is very clear that Quarles was not a competent witness, even under the statute, to prove that Steptoe was no party to the contract, and the learned judge would have so said, without taking a circuitous route to *428 prove that- Quarles was incompetent upon other grounds.
However this may be, the opinion in that case shows the distinction between a defense which goes to the fOUQ(jation of the entire contract, and a defense which is merely personal to him who pleads it, and does not touch the liability of the other defendants. The former necessarily defeats the action as to all, and is therefore not within the influence of the statute. Such is the defense of illegality or failure of consideration, or a release to one of several joint contractors, and the like.
On the other hand, the latter bars the action only as to him who pleads it; as for example the plea of infancy, bankruptcy, non est factum,. and the like. These pleas operate to the discharge of the party pleading them; but do not necessarily affect the liability of the other defendants. Whenever the defence of one of several defendants is of such a character that the plaintiff might recover against the other, if the suit was against that other only, there the statute applies. In other words, if notwithstanding the discharge or acquittal of one of the defendants, the plaintiff might at common law commence a new action and recover against him who is liable, he is entitled under the statute to a judgment against that defendant in the pending action. As, in the present case,' three of the defendants were discharged upon grounds personal to them; and as the plaintiff might thereupon discontinue and commence a new action against the defendant Bush, he is entitled under the statute to proceed against the latter in the present action without a discontinuance and a new suit. This, I think, is substantially the construction given to the statute in Steptoe *429 v. Head. This construction is not only just and sound, but it would seem to furnish a very reasonable test for determining what cases are within the influence of the statute.
In Moffett v. Bickle, 21 Gratt. 280, the action" was upon a negotiable note against the maker and four endorsers. The jury found that the note and all the endorsements but the last were usurious, but that the last was free from usury. The question was whether judgment could be given against this last endorser; and this depended solely upon the statute; for it was clear that no such judgment could be rendered at common law. The president of this court speaking for all the judges said : “If the statute does not apply to such a case, it is difficult to conceive of one to which it will apply, and the statute will be of no value. There is no need to apply it to the case of a joint action or contract against several defendants, one of whom is entitled to his personal discharge on the ground of infancy, bankruptcy, &c. Cases of this sort we have seen, constitute exceptions to the general rule requiring judgment to be rendered against all or none in joint actions ex contractu.” It will thus be seen that this case does not decide the precise question now before us, because in point of fact, all the defendants did make the contract as averred, while it was valid as to part of them only. The case is only mentioned as showing the leaning of this court to give to the statute a liberal interpretation.
A careful examination of the statute will show there is nothing in its language warranting the construction given it by the learned counsel for the defendant. It has been already quoted, but it may with advantage be repeated. “ In an action founded on . contract against two or more defendants, although the plain *430 tiff may be barred as to one or more of them, yet he may have judgment against any other or others of the defendants against whom he would have been entitled £0 recover if he had sued them only.”
Upon what principle are these words to be confined to cases in which the plea of the defendant admits the contract alleged, but sets up some matter in discharge of the obligation. The word “barred” gives countenance to no such idea. Non assumpsit is a plea “in bar” of the action; so is non est factum. If the defendant makes good his defence under either of these pleas, plaintiff is “barred of his action” as to him. If the defence does not affect the obligation of the other defendants—if the plaintiff would be entitled to recover against such other defendants had he sued them only— he is by the express terms of the statute entitled to judgment against them in the pending action.
The counsel for the defendant, in a very elaborate note of argument, presents very strongly some of the mischiefs which he supposes will result from this construction of the statute. TTor example, he suggests that the same rule must apply to actions on simple contract. A defendant may be sued with another on a joint assumpsit, which he knows he has made, but from which he has been discharged by payment or otherwise, and he has also assumed individually another debt to the same plaintiff", which he has likewise discharged; he goes to trial prepared to prove his defence on the joint contract, but the plaintiff proves his individual assumpsit as to which he is not prepared.
This argument, it must be admitted, assumes the existence of a very unusual transaction. It assumes the defendant has- made two simple contracts with the plaintiff, one joint and the other several; that both have been performed; that the plaintiff brings his suit *431 on the joint contract; and with a fraudulent intent he and his counsel on the trial abandon the joint contract, and elect to proceed for that which is several.
How, conceding that this may sometimes happen, the same difficulty may occur in an action of trespass, trover, assault and battery, false imprisonment against several: the defendant may come prepared to defend himself on the joint charge, and the plaintiff may elect to proceed for a several trespass. And yet it is well settled that in actions of tort against several, one of the defendants may be convicted by the jury, while others are acquitted.
But it is difficult to see how a case, such as that suggested, can ever occur, if the parties observe the ordinary rules of pleading. The declaration must always so state the cause of action, as to give the defendant notice of the precise nature of the complaint. In assumpsit the plaintiff is required to file an account setting forth the several items, unless they are plainly described in the declaration. The defendant thus plainly sees what he is charged with. He knows what he is required to defend, whether he is sued singly or jointly with others. The rule in question authorizes the plaintiff to declare against several as upon a joint contract, and to recover against a part of the defendants. But this is the only variance. The proofs must correspond with the allegations in every other respect, and the plaintiff must prove his case as laid. Unless therefore the defendant has made two contracts with the same plaintiff, one joint and the other several, both identically the same in all the essential elements of consideration, subject-matter and promise of performance, it is impossible that the plaintiff can surprise the defendant by abandoning the contract laid in the declaration, and proving another on the trial.
*432 The learned counsel further insists, that under this construction of the statute a person may be joined as a defendant, merely to exclude him as a witness, or for the purpose of giving jurisdiction to the court of a particular county against a non-resident defendant.
It is sufficient to say, that conduct of this kind would be treated as a fraud upon the non-resident, and an abuse of the process of the court. The exposure would be easy, and the punishment immediate, in the dismissal of the suit as to such non-resident, or in the prompt discharge of the defendant, whose testimony is thus sought to be excluded. Laws are passed, and rules of practice adopted by the courts, suited to the general convenience of parties and the due administration of justice among men. Any rule that may be adopted will sometimes lead to abuse and injustice. The remedy is not in the repeal of the rule or statute, but in the corrective power of the courts.
Again, the counsel argues that the defendant may have set-offs against the debt, but he is not allowed to-file them, because they are due him individually, whereas the debt claimed is sued as a joint obligation; or the defendant may have signed the bond sued on with express condition that the other parties were also to sign,—how can he avail himself of this plea until it is ascertained whether the other parties are bound?
The difficulty last mentioned would equally occur if the defendants relying upon the pleas of non est factum, should die before suit brought, or even afterwards and before the pleas were tried. The action being against the survivor only, how could he plead that his contract was conditional. In this very case, the bond being several as well as joint, the suit might have been first against the defendant 13ush, omitting the others; and thus, according to the argument of the learned coun *433 sel, his client would have been precluded from pleading that his contract was conditional. The argument unfortunately proves too much.
But the answer to all this reasoning is, that the defendant knows at least the tenor of his own contract. When he sees his co-defendants thus denying the execution of the bond, if he meant to rely upon the fact that he signed the instrument conditionally upon their executing it also, he ought to put that matter in issue by proper averments, and he clearly has the right to do so. His success will depend in a great measure upon their success in making good their defence. If they fail he will also fail, and the burden will fall upon all.
In regard to the question of set-offs, the difficulty suggested by counsel equally arises where the action is several and one of the defendants relies upon the plea of bankruptcy, infancy, or any other matter which goes to the personal discharge of such defendant.
In all this class of eases it is conceded that although one of the defendants may be acquitted, the plaintiff may nevertheless have judgment against him who is liable; and yet the latter may be deprived of his set-offs by a joinder with him who is not liable. How does the learned counsel propose to get rid of this difficulty; one, no doubt, of frequent occurrence in the administration of justice. All the defendant can do under such circumstances, is to bring his cross-action, obtain his judgment, and at the proper time apply to the proper court to have the judgments set off one against the other. The practice of setting off one judgment against another is derived from the general authority of the common law courts over sureties, and is said to be the exercise of an equitable jurisdiction *434 in those courts; a jurisdiction liberally exerted, and not confined to debts due to and from the same number of persons. The law of set-ofFs is almost exclusively a creature of statutory regulation. At common law it was never permitted unless the debts were mutual and grew out of one and the same transaction. If the effect of the statute is to restore that rule in a few exceptional cases—no doubt of rare occurrence— and to put a defendant to his separate action, it is difficult to see that any great hardship or injustice is thereby inflicted. Clearly there is no just cause of complaint where the defendant by his form of contract, deliberately executed, places it in the power of the creditor to sue one or all the obligors to the bond.
In regard to all the views presented by the counsel for the defendant, it may with perfect truth be said, that none of them apply to his client. The defendant. Bush was not precluded from relying upon any set-off he might claim, or of offering his plea of a conditional obligation. He had the fullest opportunity after the case was tried on the pleas of non est factum, of making any defence he could have made if the action had been against him only. It was never pretended ■or even suggested that he had any defence other than that of usury.
It is very true that Bush resided in Franklin, and that jurisdiction was given to the Roanoke court as to him by joining the three defendants who are acquitted. But it has never been even intimated that the plaintiff was guilty of bad faith in so doing. He no doubt honestly believed that all the parties had executed the bond. The statute declares that the suit may be brought in any county wherein either of the defendants resides, and it authorizes process to be sent to the distant counties for the co-defendants.
*435 It could scarcely have been the design of the legislature that a plaintiff who pursues the statute does •so at his peril; and that whenever a resident co-defendant is acquitted by the verdict, the action must abate as to him who resides in another county. If the plaintiff honestly believes that both defendants are liable, and has reasonable grounds for so believing, he is entitled to proceed as though all were in fact liable. The jurisdiction of the court having once attached, will not be ousted because it turns out that the resident defendants are not liable. In such case, & prima facie defendant is a proper defendant for all the purposes of jurisdiction. As already said, if the process of the court is abused, and a mere pretext made to give a color of jurisdiction, the corrective power of the court will be used in punishing the offence by a prompt dismissal of the suit at the cost of the offending party.
I have thus attempted to notice some of the more prominent objections of the counsel for the defendant to the statute, according to our interpretation. These objections might have been more properly addressed to the legislature, inasmuch as the courts must execute the law as they find it, and not as they would have it. It may not be amiss, however, to consider briefly some of the mischiefs which will result from a contrary interpretation. These may throw some light upon the design of the legislature in passing the statute.
In the first place, the rule requiring a plaintiff' in an action ex contractu against several defendants to prove the contract as to all, is a mere rule of the common law. Like many other of the common law rules, it is purely technical in its nature, in many instances producing great delay and much inconvenience without any corresponding advantages. The defendants *436 very rarely derive any real substantial benefit from it.. Whether one or many be sued, the parties soon understand by the pleadings the real matter of controversy,. an(j come prepared to meet it.
On the other hand, the plaintiff often encounters difficulties, not only as to the form of action, but also-in determining the proper pai’ties defendant. A person in possession of a written obligation as obligee or assignee, signed, or purporting to have- been signed by several, and honestly believing they are all liable, brings his suit against all. He is met on the trial with a plea of non est factum, by one or more of the defendants. A verdict is rendered in his favor, bills-of exception are taken, writ of error allowed, a' reversal by the appellate court; other trials are had, and finally a verdict for the defendants upon these pleas. And then, after years of fruitless litigation and expense, the plaintiff’ is compelled to start out upon a. new expedition against the other defendants who are confessedly liable, and who never had a shadow of defence. And call this because the plaintiff had sued five defendants, when he ought to-have sued four or a less number. But why go in pursuit of imaginary eases, when the one before us furnishes a most apt illustration. 'The plaintiff' was in possession of a bond probably brought to him by the principal obligor. He doubtless believed that all the signatures were genuine. The presumption is, he would not have taken it if he had not so believed. Upon the trial he is met with pleas of non est factum by three of the defendants. What was he to do under such circumstances—dismiss his suit and commence a new one against the others? That will scarce be contended. He was not bound to give up the security furnished by these three apparent obligors. It was his right and his duty to try the *437 •question. Until the case was actually decided by a jury, it was impossible to say whether the defence would be successful or not. The defendant Bush was himself materially interested in the issue; for if the plaintiff succeeded, the burden which otherwise must be borne by him singly would be shared by others equally with him. It is not pretended that the defendant Bush is discharged from his obligation bjT the acquittal of the other defendants. All that is claimed is that the plaintiff ought to discontinue and commence a new suit against him. But why bring a new suit? All the facts necessary to enable the defendant to make his defence are already in the record. Why turn the plaintiff around to another action, when perfect justice can be done and was done to the parties in this? I am justified in saying that justice was done, because it does not appear—no complaint is made—that any damage or loss was sustained by this defendant in the present action which might have been avoided in a separate suit against him. The objections made by his counsel are purely technical, and do not affect the real merits of the controversy. And now, after the lapse of fifteen years, we are called upon to reverse the present judgment, not because injustice has been done this defendant, but because the plaintiff brought a joint action against all, instead of a separate action against each. This simple statement is of itself sufficient to vindicate the wisdom of the statute. If the legislature had never passed such a provision, the common voice of the profession would say that such an enactment is demanded by the highest considerations of justice and sound policy.
The only remaining assignment of error to be considered is, that the jury being sworn to try all the issues joined, it was improper to permit them to ren *438 der a verdict in favor of a part of the defendants on, some of those issues. The learned counsel for the defendant, in his note of argument, quotes a remark made by Judge Green in Gardner’s adm’r v. Vidal, 6-Rand. 106, that there is no example of a verdict being set aside as to one issue and suffered to stand as to others, and trying a cause by piece-meal; and the-learned counsel insists that the converse of the proposition is equally true, that “there is no example of a jury being allowed to render a verdict on one issue when they cannot agree as to others, and thus trying the cause by piece-meal.” As has been already seen, at common law if the plaintiff elected to treat the-contract as joint, and sued all the contracting parties, his judgment must have been jointly against all or none. There could, of course, be but one final judgment. As a necessary consequence the jury could never find part of the issues for a portion of the defendants.
But if our construction of the statute be correct, if notwithstanding the acquittal of a part of the defendants upon grounds personal to them, the plaintiff may still have judgment against the others, no good reason suggests itself why such judgment may not be had at a subsequent term of the court. If the jury are agreed as to some of the defendants upon issues personal to them, why should they be prohibited from rendering a verdict as to such defendants merely because they are not agreed as to others who make a wholly different defence? Why should the plaintiff be precluded from assenting to such a verdict if he is satisfied it is justified by the evidence? Is he to go on from term to term summoning witnesses, empanneling juries, and incurring increased expense, in support of an issue he knows must always be decided against *439 him? Is one defendant to incur the trouble and expense of successive trials because the jury are not agreed upon other issues as to other defendants, with whom he is in no manner connected? If such a rule be adopted, the result will be that the plaintiff will always bring several actions against the obligors, of which they must bear the cpsts, when a single action would answer but for the rule.
The plaintiff is authorized by statute to take judgment from time to time against the defendants as they are served with process. Long before this enactment it was the constant practice, where some of the defendants had not been arrested, for the plaintiff to take judgment against those who were, although those not arrested had not been proceeded against as far as the law authorized. 1 Rob. Prac. 258—’9; Moss v. Moss’s adm’r, 4 Hen. & Mun. 293. This was in effect allowing several judgments against several defendants at different times, in a joint action on contract. And I can see no good reason why, under the influence of the statute, there may not be separate verdicts as to different defendants, where the issues are entirely distinct, and the plaintiff is barred as to part of them upon grounds which do not affect the liability of the others.
I have had no access to any reported cases in states where statutes similar to ours are in force; but in Hilliard on New Trials, 145, note a, reference is made to the case of Sprague v. Childs, 16 Ohio St. R. 107. It is said to have been decided in this ease, where there are several defendants, each of whom pleads a separate defence, upon which issues are joined, and a second trial is taken (under the Ohio Code) by one of the defendants, the only issues then to be tried are those between plaintiff and defendant. If the defendant’s *440 plea goes to the plaintiff’s right to recover against any of the defendants, it will, so far as it is established, enure to the benefit of the other defendants as full7 as it would have done upon the first trial. But if the defence of the defendantgoes no farther than to exonerate himself from liability, the liabilities of the others will remain unaffected by the result of the second trial. This is substantially the proposition involved in the case before us—several verdicts at different terms as to different defendants, whose defences are not connected.
It has been urged that the defendant. Bush, was vitally interested in the trial of the pleas of non est factum, and a verdict thereon ought not to have been received without his consent.
The defendant had the fullest opportunity of taking part in the trial of the pleas of non est factum. How long was the case to be continued upon those issues? How many trials to be had until the defendant himself was convinced of the hopelessness of the struggle?
If the defendant was interested, so was the plaintiff, in showing that all the signatures to the bond were genuine. The latter seems to have been satisfied that the defence was well founded. If the jury had, at the same term of the court, rendered a verdict upon the plea of usury as to the defendant, Bush, he would have had no just cause of complaint; and yet his condition, in that event, would have been no better than it is now. Suppose after the verdict was rendered in favor of the three defendants the plaiutiff had discontinued and commenced a new action against the present defendant, in what respect would -his position have been improved? So soon as those defendants were out of the way, the defendant, Bush, could make any defence he might have made had they been omitted in the first *441 instance. So far from being prejudiced, he was actually benefited by the rendition of the separate verdict. He made no objection to it. It seems to have been acquiesced in on all sides, no doubt from a consciousness that the result was inevitable, aud could not be varied upon any future trial. The jury being unable to agree upon the question of usury were discharged by consent of all parties. This was at the April term 1859. More than a year thereafter the verdict was rendered against the defendant, Bush. His motion, in arrest of judgment, did not embrace this objection. It was made for the first time in the petition for an appeal. If there was any weight in the objection at any time, it was one the 'defendant might prefer to waive, and one he had the right to waive. Having seen without objection the return of the separate verdict, having agreed to the discharge of the jury upon the other issue, having subsequently moved for a continuance of the case, and having taken his chances before another jury, where his defence was fully investigated, the defendant cannot be permitted for the first time in this court to make the point in this court, but must be held to have waived the irregularity, if indeed it could be regarded as an irregularity.
Hpon the whole, I am of the opinion the judgment of the Circuit court is right, and should be affirmed.
Judgment affirmed.