## Choen v. Guthrie et al.

Dicided May 3, 1879.

1879
Special Term.

1. A joint actión in *assumpsit* on an open account is brought by C. against G. S. and T , who pleaded *non assumpsit* and payment; and one of the defendants, S., files a specification of set-off, which consisted of a claim due from the plaintiff to S , and at the trial the court allowed this set-off to be proven. HELD :

That the court erred in admitting such proof.

2. If a set-off was claimed by S. because he stood as principal to his co-defendants under the 4th sec. of ch. 126 of the Code of W. Va. he should have so stated in his specifications; and if he has failed to do so, he can not prove such set-off.

3. The 19th sec. of ch. 131 of Code of W. Va. does not authorize by implication a defendant in such a case to file a several set-off to a joint demand.

4. *Quære.* Does this section authorize in such a case a judgment for the plaintiff against one defendant, if he fails to prove that more than one entered into the contract?

A writ of error and *supersedeas* to a judgment of the circuit court of Mason county, rendered on the 18th day of October, 1876, in an action in said court then pending wherein J. M. Choen was plaintiff, and F. A. Guthrie and others were defendants, granted on the petition of said Choen.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case :

In January 1879, J. M. Choen brought an action of *assumpsit* in the county court of Mason county, against F. A. Guthrie, S. G. Shaw and J. C. Timms for boarding for them, B. Smith and 36 cadets for two days at $1.50 per day, as appears by the bill of particulars filed with the declaration, which contained nothing but common counts. The defendant pleaded *non assumpsit* and payment ; and one of the defendants, S. G. Shaw, filed specifications of payment and set-off which he desired to prove, which consisted of a note or bond of J. M. Choen to the defendant, Samuel J. Shaw, which was for $122.75 and was dated August 21, 1855, and was payable twenty-four months after its date, and on which was endorsed as credits : July 6, by linen coat and vest $4.00, and October 10, 1874, by boarding of these thirty-six cadets from West Virginia University and B. Smith two days $75.00 ; leaving balance due Shaw $169.75. This account is made out in the name of Shaw alone against Choen ; and the balance on its face is said to be due to Shaw. The plaintiff, the record states, craved oyer of this bond of Shaw referred to in this account of specifications of payment and set-off, and demurred to the specifications ; and thereupon the court overruled the demurrer ; and thereupon he pleaded payment of this bond, and issue being joined, the parties waiving the right of a jury submitted the case to the court, who having heard all the evidence offered by the plaintiff and defendants, found for the defendants and assessed the damages of the defendant, S. G. Shaw, at $164.00 ; and it was therefore considered by the court that he recover from the plaintiff $164.00, with interest from the date of this judgment, May 20, 1876, and the defendants recover from the plaintiff their costs.

On the trial the defendants offered in evidence the bond of J. M. Choen to S. G. Shaw, above described in

his bill of particulars; then the plaintiff objected to its being read in evidence, but the court overruled the objection and permitted it to be read in evidence, to which the plaintiff took a bill of exceptions, which was made a part of the record. From the judgment and action of the court a writ of error was regularly taken to the circuit court of Mason county, and the circuit court on October 18, 1876, affirmed the judgment of the county court and rendered a judgment in favor of the defendants against the plaintiff for their costs incurred in the circuit court, and that the defendant, Shaw, recover against the plaintiff the damages prescribed in section 21 of chapter 17 of the Acts of 1872-3; and this judgment of the circuit court is brought before this court for review by the plaintiff, Choen, on writ of error.

*Rankin Wiley, Jr.,* for plaintiff in error, cited the following authorities:

4 Rand. 359; Code, p. 609, §4; 2 Otto 366.

*Tomlinson & Polsley,* for defendants in error, cited the following authorities:

Code, ch. 129, §4; *Id.* 131, §19.

GREEN, PRESIDENT, delivered the opinion of the Court:

The question involved in this case is, whether the county court erred in permitting the defendant, Shaw, to prove the offset which he named in his specification of offsets and in rendering a judgment in his favor for the difference between this offset and the plaintiff's claim jointly against him and the other defendants. It is too well settled to admit of any controversy, that at common law a joint and separate demand can not be set off against each other. See *Porter* v. *Nechervis,* 4 Rand. 363; *Scott* v. *Treat,* 1 Wash. 79; *Armstead* v. *Bullers adm'r,* 1 H. & M. 476; *Ritchie & Wales* v. *Moore,* 5 Munf. 388. The common law is modified by the 4th section of

ch. 126 p. 609 of our Code to the extent of permitting a security to set off a debt due to him from the plaintiff, if the persons, against whom such claim is, stand in the relation of principal and surety and the person opposing the set-off is principal. If the person, who files such plea, claims the benefit of this exception, his plea of set-off must of course allege that he is principal and the other defendants securities in the claim sought to be enforced; and if he does not file a plea, but merely a specification of set-off, under this statute he must state in the specification of set-off that he is principal in the claim set out by the plaintiff; for the purpose of the law in permitting specifications of set-off to be filed was not to afford the defendants an opportunity to surprise the plaintiff by failing to give the plaintiff as full notice of the nature of the set-off as would have been of done in a plea of set-off, but only to dispense with the filing of a formal plea. This section, page 609 of our Code, requires that the specification of set-off shall be so described in the account as to give the plaintiff notice of its nature; and if this be not done, the statute forbids the set-off insufficiently described to be proven at the trial. This was not done in this case; and this statute therefore forbade it to be proven at the trial; and it could not be proven, unless it is indirectly permitted by section 19, chapter 131 of our Code, page 628. That section provides: "In an action founded on a contract against two or more defendants, although the plaintiff may be barred as to one or more of them, yet he may have judgment against any other or others of the defendants, against whom he would have been entitled to recover if he had sued them only.

It is insisted in argument by the appellees' counsel. that this section authorized the plaintiff in this case to obtain judgment against Shaw, one of the defendants, if the proof showed that he only was responsible for the debt, though the plaintiff's claim was on the face of the declaration a joint claim only against him and the

other defendants; and that therefore a judgment could be rendered against Shaw only, this Court must presume that the proof showed that he alone was responsible for the debt, and he could therefore of necessity, to prevent a failure of justice, plead an offset due to him alone, and, if successful, obtain a judgment in his favor against the excess of his offset over the plaintiff's claim. The appellee's counsel assumes as self-evident on the face of this statute, that on the trial of the general issue of *non assumpsit*, if the plaintiff proved that Shaw, one of the defendants, was *alone* responsible to him he could obtain a judgment in this suit against him alone, though he sued him jointly with others on what he alleged in his declaration was simply a joint contract.

We will first consider, whether these assumed premises are true.

The law prior to the passage of this act is so clearly stated by Judge Moncure in *Moffett* v. *Bickle*, 21 Gratt. 281, that I cannot better state it than to quote what he says on the subject : "It is a rule of common law, that upon a joint contract the action must be against all the joint contractors, and as a general rule the judgment must be against all or none of them. But that is not a universal rule. When a defendant in such an action pleads matter which goes to his personal discharge, such as bankruptcy, infancy, or any matter which does not go to the action of the writ; or pleads or gives in evidence matter which is a bar to the action as against him only, and of which the others could not take advantage, judgment may be given for such defendant and against the rest. 1 Rob. Pr. old ed. 400-402, and cases there cited, viz: *Cole* v. *Pennell,* &c., 2 Rand. 174; *Walmsley* v. *Lindenberger* & *Co., Id.* 478; *Tooler* v. *Bennett,* &c., 3 Cain 4; *Hartness* &c. v. *Thompson,* &c., 5 Johns. 160; *Morton* v. *Croghan,* 20 *Id.* 106.

"Such was the common law when the act was passed authorizing an action of debt to be brought against the drawer and endorsers of a foreign bill of exchange jointly,

1879
Special Term.

Ghoen
v.
Guthrie *et al.*

or against either of them separately, 1 Rev. C. 1819 p. 485, §2. This act was extended from time to time to all bills or notes negotiable at banks or their offices of discount and deposit, or the places of business of a saving institution or bank, &c., until it assumes the form in which it now stands in our Code of 1860, ch. 144, §11, p. 629," (Code of W. Va. ch. 99, §11 p. 537.) "The remedy given by this act, as Judge Green well remarked in *Taylor* v. *Beck*, 3 Rand. 316, 328, was perfectly novel in all respects, since it authorized a joint action on several contracts; and such an action of debt even against one only, as was not known to the common law. 1 Rob. Pr. old ed. 48. Though the contracts of the drawer and endorser are several, yet when the action is brought against them *jointly*, the parties are subjected to all the consequences flowing from the settled rules of the common law governing *joint* actions. One of these consequences is that the judgment also must be joint; and that a failure as to one of the defendants is a failure as to all of them. This rule is as applicable to a joint action upon a joint and several bond, as to any other action; and of course it equally applies to a joint action against the drawer and endoiser of a foreign bill of exchange, &c. *Taylor* v. *Beck*, 3 Rand. 316. There are some cases, as before stated, in which a judgment may be given for one defendant upon a plea of infancy, or matter which goes to his personal discharge, without affecting the liability of the other. But cases of this kind constitute exceptions to the general rule. See *Taylor* v. *Beck*, 3 Rand. 334, opinion of Green, J., and opinion of Cabell, J., in S. C. p. 360, also 1 Rob. Pr. old ed. 49.

"Such was the State of the law as modified by the act aforesaid when the provisions contained in the Code of 1860, ch. 177, §19, p. 733. (Code of W. Va. ch. 131, §19 p. 628)" was enacted * * * Here the statute comes in to our aid; in part no doubt, if not chiefly in consequence of the decision in *Taylor* v. *Beck*, 3 Rand. 316." See 21 Gratt. 286.

The first act of the nature of the §19 of ch. 131, p. 678 of our Code, was an act passed March 12, 1838, Sess. Acts. 1838, p. 74 ch. 96, the second section of which provided: "That in all actions on contracts against two or more defendants, if one or more of them shall be acquitted or discharged by the verdict of a jury or otherwise, the plaintiff shall be nevertheless entitled to proceed to judgment against the other defendant or defendants, in like manner as if the action had been instituted against him or them, without joining the party or parties who may have been acquitted or discharged; but the last mentioned party or parties, shall be entitled to recover his or their costs of the plaintiff." The decision of *Taylor* v. *Beck*, was rendered in 1825; and doubtless it occasioned serious inconvenience in enforcing the payment of debts evidenced by negotiable paper, and as Judge Moncure says, probably chiefly because of this decision, this act of 1838 was passed and has substantiaally been in force ever since.

Several constructions of this act have been insisted upon. The first question is: What meaning is to be given to the word *barred* as used in this act? It says in a joint action on contract "although the plaintiff may be *barred* as to one or more of the defendants," yet he may recover against another. On the one hand it is claimed, that under this act the plaintiff in a joint action on a contract against several defendants may have judgment against a part of them, although the others are acquitted upon grounds which go to the denial of the *joint* contract stated in the declaration; and on the other, that this statute does not apply to a case in which the right to a *joint* action never existed, and that it could not have been intended by the Legislature to permit a party to declare on one contract and recover on another: to declare on a *joint* contract, and recover on a *several* contract; and that the true object of the act was to reach the case *in which the contract is proved as laid*, but by reason of some personal disability, as infancy or some

subsequent discharge such as bankruptcy, personal to
him who pleads it, the plaintiff's action is *barred* as to
part of the defendants.

This last position receives some countenance from the case of *Steptoe* v. *Read, &c.*, 19 Gratt. 2. The syllabus is: "The act Code 1860, ch. 177, §19 (which is the same as ours), applies only to cases in which some of the defendants are discharged upon grounds of defense *merely personal*; and when the ground of defense goes to the foundation of the entire contract, the case remains as at common law." It is true Judge Joynes does speak of a defense by one of the parties, that he was no party to the joint contract sued upon, as "a defense personal to himself." See page 11. But such a defense is clearly not one personal to the party making it such as infancy or bankruptcy; but it clearly "goes to the foundation of the entire contract," that is, destroys the *joint* contract sued upon. It is very difficult to comprehend Judge Joynes's views; and counsel in the case of *Bush* v. *Campbell*, 26 Gratt. 403, suggested that he merely admitted for the sake of the argument in that case that a judgment might be rendered against one, when the proof showed that but one entered into the contract. See p. 412; and Judge Staples in his opinion says this may be so, see p. 427. It seems to me the word "barred" used in the act must be interpreted to mean the same as the words "acquitted or discharged" in the act of 1838 *non assumpsit* is a plea in bar and so is *non est factum*, If the defendant makes good his defense under either of these pleas, the plaintiff "is barred of his action" as to him. See Judge Staples's opinion in *Bush* v. *Campbell*, 20 Gratt. 430. It is difficult to see the necessity or use of this statute if the word *barred* is to be confined to a defense personal to one of the defendants; for, as we have seen, the common law in such a case permitted a judgment against the other.

But it seems to me the last clause of this section is

more difficult of interpretation. It says though barred as to one of the defendants, the plaintiff "may have judgment against any one or others of the defendants, against whom he would have been entitled to recover if he had sued them only." The apparently most natural construction of this language is, that it means that the plaintiff, though barred or defeated in his action as to some of the defendants, may nevertheless have a judgment against those of the defendants against whom he would have been entitled to judgment, had he sued them only *on the contract alleged in the declaration.* The other construction, which has been sustained by highly respectable authority, is that if defeated by some of the defendants, the plaintiff may nevertheless recover against others, against whom he would have been entitled to judgment had he sued them only *on the contract as proven at the trial.* As an example of a case which would come within the operation of this statute according to this first, and apparently its most natural, construction, a joint suit is brought on a negotiable note against the maker and three endorsers under the 11th section of chapter 99 of our Code, page 537; and the declaration sets out the contract, that is, the making of the note, its successive endorsements, protest and notice. Under this section the holder has his option to bring on this note and its endorsements a joint suit against all the parties, or a separate suit against any one, or a suit against any intermediate number of them. If he sues all jointly, the statute we are construing, the 19th section of chapter 131, page 628 of our Code, would in such case authorize a judgment against any one or more of the parties, the maker and one endorser for example, though the other endorsers prove that they never endorsed the note, because upon the contract or note and its endorsements *as described in the declaration* the holder would have had a right, had he sued the maker and one endorser, to recover against them. Before the passage of this statute according to the decision of *Taylor* v.

*Beck*, 3 Rand. 316, judgment could not in such case have been rendered for the plaintiff at all, unless he established his cause of action against the maker and all three of his endorsers. As an example of a case which would not come within the act we are construing under this construction of it: A suit is brought on a joint bond, or contract of any sort, against four obligors; the bond or contract is described in the declaration as a joint contract of the four defendants; two of them however succeed in proving they never executed the bond, or united in this joint contract alleged; if the first construction suggested be right, no judgment could be rendered against the other two, because as the *contract was in this case alleged in the declaration* the plaintiff would not have been entitled, if he had sued these two alone, to recover a judgment against these two, the contract being alleged to be the joint contract of four. According to the last suggested construction, judgment could in such case be rendered against the two obligors who were proven to have entered into the contract, for though all four were sued on a joint contract, as alleged in the declaration, yet the proof shows there was no such contract but in fact a joint contract of two of the defendants only; and according to this construction of this statute judgment may be taken against such as by the proof it is shown the plaintiff was entitled to recover against, though his declaration showed no right to recover against these two on such a contract as he alleged.

Against the first of these views it is urged, that if so construed, this statute would not remedy the evil which it is supposed it was passed to correct, *i. e.* that if a plaintiff sued on a joint contract, he could only get a joint judgment, except in a few cases. To which it may be replied that most of the cases, in which difficulties arose, were joint suits on negotiable notes against maker and endorsers, or suits on bills of exchange against drawer and acceptor jointly; and all these cases would come

within the operation of this statute and it was the difficulty suggested in one of these cases, *Taylor* v. *Beck* 3 Rand. 316, that probably suggested this last statute. On the other hand it is insisted, that if the other construction is given, it does away with one of the most necessary rules of the common law, that the *allegata* and *probata* must agree, and that if a party be allowed to allege one contract in his declaration and prove and recover on an entirely different one, it will give rise to great confusion and injustice. If such be the law, a plaintiff, who knows that his debtor has a just offset against his demand, can prevent such offset by joining some other defendant and alleging in his declaration that there was a joint contract ; and though he produces no proof of such joint contract, he would still recover his debt having deprived his debtor of his oppurtunity to plead offsets. So if the creditor wishes to bring suit in a county in which his debtor does not live, he may sue him jointly with a resident in the county where he wishes to bring the suit, and though he offers no proof of such joint contract, he may recover of his debtor. So if he wishes to prevent a married woman from testifying against him, the plaintiff has only to join in the suit her husband, for she could not then be a witness, see *Steptoe* v. *Read*, 19 Gratt. 1 ; and though her husband has nothing to do with the matter, the creditor would still recover his separate judgment against his debtor, having excluded by his form of action the wife as a witness. Many other inconveniencies might be suggested as likely to arise from the abandonment of the fundamental principle that the *allegata* and *probata* must correspond. Some of these suggestions are partially answered by Staples, J., in *Beck* v. *Campbell*, 26 Gratt. 430 to 435 ; but he has suggested no mode of avoiding some of the suggested difficulties, if this construction of the statute is adopted ; and some of them he seems to admit cannot be avoided. At present it seems to me that more difficulties will be introduced than removed by this construction ; and the

language of the statute does not, it seems to me, bear this construction naturally.

The case of *Moffet* v. *Brickell*, 1 Gratt. 280, was a suit against the maker and four endorsers of a negotiable note jointly. It turned out that three of the endorsers and the maker were relieved because of usury, while the fourth was not. It was held that a judgment could be rendered against this fourth endorser. This decision was in accord with the first and, I think, most natural construction of this statute. Judge Moncure however intimated that a broader construction might be given this act; and such broader construction was given it in *Bush* v. *Campbell*, 26 Gratt. 403, and *Muse et al.* v. *Farmer's Bank of Virginia*, 27 Gratt. 252. In these cases it was decided, that this section extends to a joint suit on what is alleged to be a joint contract in the declaration, when the proof showed that some of the defendants never executed the contract. My impressions are against the soundness of the reasoning whereby this conclusion was reached; but as it is unnecessary to decide this point in the case before us, and as it has not been argued by the counsel in this case, I refrain from expressing or reaching any positive conclusion on this point.

If we admit the broadest construction of this statute that has been suggested, and that in this case the plaintiff could under his declaration have recovered a judgment against Shaw alone, it by no means follows that he could plead a several offset due him from the plaintiff. The utmost effect given to this statute according to the Virginia construction is found in the case of *Bush* v. *Campbell*, 26 Gratt. 431; and Judge Staples in delivering the opinion of the Court only goes to the extent, that this statute permits a variance between the contract alleged and the contract proven to exist so far as that it may be alleged to be joint and proven to be several; but "the proof must correspond with the allegations in every other respect; and in other

respects the plaintiff must prove his case as laid."
See 26 Gratt. 431. The statute is thus construed sim-
ply as relieving the plaintiff from the common law con-
sequence of a variance between his *allegata* and *probata* ;
but it certainly confers no new rights on the defendants.
If they could not plead a several offset to a joint de-
mand before, there is nothing in this statute to confer
on them such right, or indeed any other right. Because
the law as it is supposed has given the plaintiff a right
to prove a case different from what he alleges in his
declaration, it does not follow that the defendant has a
right to plead to this imaginary case which the plaintiff
may prove, but which is in no manner stated in the
pleadings.

It may be said justice requires that the defendants,
or any of them, should be allowed to plead to the case
which the law allows the plaintiff to prove. This would
obviously introduce endless confusion. How an issue
could properly be made up when the defendants are per-
mitted to depart entirely from the allegations made by
the plaintiff in his declaration, and proceed in the plea
as if replying to an entirely different declaration, it is
difficult to conceive. No such privilege is conferred by
the statute ; and such a breach of the first principles of
pleading cannot be allowed. The fact, that it cannot
possibly be allowed, is one of the many reasons why I
would hesitate to permit the plaintiff to recover on a
contract not proven, when the contract alleged is not such
a contract as would in any suit justify the judgment he
asks. But even if this should be allowed, we would
be but further increasing the confusion, if we were to
allow the defendants or any of them, to plead to the
imaginary case which they might suppose the plaintiff
would prove.

Judge Staples, who certainly goes as far in giving a
broad construction to this statute as I can ever go, if not
further, still does not give the least countenance to the
idea that one of the defendants has by virtue of a right

to plead a separate demand against the plaintiff as offset to the plaintiff's joint demand against all the defendants.

In *Bush* v. *Campbell*, 26 Gratt. 433, he says: "All the defendant can do under such circumstances is to bring his cross-action, obtain his judgment, and at the proper time apply to the proper court to have the judgments set off one against the other * * * The law of set-off is almost exclusively a creature of statutory regulation. At common law it was never permitted, unless the debts were mutual and grew out of one and the same transaction. If the effect of the statute is to restore the rule in a few exceptional cases—no doubt of rare occurrence—and to put a defendant to his separate action, it is difficult to see that any great hardship or injustice is thereby inflicted."

I am therefore of the opinion, that the 19th section of chapter 131 of our Code, page 628, does not confer on one defendant a right to plead, in a suit against him and others on a joint contract, a several offset due to him from the plaintiff; and that therefore the county court improperly permitted proof of this several offset to be given, and erred in rendering a judgment for one of the defendants against the plaintiff for the amount which such offset improperly admitted exceeded the plaintiff's demand. Though the evidence is not certified to us, and we are bound to make all reasonable presumption to sustain the judgment and action of the court below, yet it cannot be sustained in this case; for the defendant, Shaw, had no right to plead this offset, unless he stood in the relation of principal to the other defendants; and if he did, he was bound to allege it in his plea or account of specifications. Not having done so, no conceivable evidence would have rendered it proper to receive proof of a matter not only not properly in issue, but which the defendant had no right to put in issue. The proper mode of raising this question was by moving to exclude the evidence from the jury, as was done. It was irregular to demur to the

1879
Special Term.

Choen
v.
Guthrie *et al*

Syllabus 2.

Syllabus 1.

Syllabus 3.

specification of set-off; and there was, for that reason only, no error in the court overruling this demurrer. If a formal plea of set-off had been filed setting forth the matters contained in the specifications of set-off, a demurrer to such plea ought to have been sustained.

The judgment of the circuit court of Mason county, rendered on the 18th day of October, 1876, affirming the judgment of the county court of Mason county rendered on May 20, 1876, in favor of the defendant, S. G. Shaw, against the plaintiff, I. M. Choen, for $164.00 with interest from that date, and the judgment of that date in favor of all the defendants against the plaintiff for costs, is therefore reversed, set aside and annulled, and the appellant must recover of the appellees his costs in this Court expended; and this Court, proceeding to render such judgment as the circuit court of Mason county should have rendered, doth reverse, set aside and annul the said judgment of the county court of Mason county, and doth adjudge, that the appellant recover of the appellees their costs expended in the circuit court of Mason county; and a new trial is awarded the plaintiff; and this case is remanded to the circuit court of Mason county, to be there proceed with according to law and the principles laid down in this opinion.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.   CAUSE REMANDED.