# Richmond.

BROWN'S COMMITTEE v. WESTERN STATE HOSPITAL.

November 18, 1909.

Absent, Buchanan, J.

1. APPEAL AND ERROR—*Record—Parties—Effect of Former Decrees.*—Upon an appeal to this court, the case must be heard and determined upon the record considered and passed upon in the trial court, and hence an agreement between counsel for the respective parties that, in order to determine the rights of all parties interested in the funds in the cause, it shall be heard and determined in this court as if certain persons who were not parties in the trial court were parties to the record, must be ignored. Nor will an agreement between counsel, as to the effect of a former decree entered in the cause, be considered.

2. INSANE PERSONS—*Action for Support—Liability at Common Law.* The right of action against the estate of a lunatic for passed expenses incurred in supporting him in one of the State's hospitals exists only by the statute imposing a personal liability for such support. At common law no such right existed, in the absence of express contract.

3. INSANE PERSONS—*Action for Support—Remedy Withdrawn by Act of 1908.*—The purpose and intent of the act of Assembly approved March 16, 1908 (Acts 1908, p. 687), was to declare that thereafter no claim, not reduced to judgment, for the maintenance and support of insane persons committed, before or after the passage of the act, to an insane asylum or hospital of the State, should be collected. The plain intent of the legislature was to deal alike with all citizens of the State committed to either of the several hospitals established for their care and comfort, and to put them all in the same class; and while the language of the act imports future operation and effect, it destroys the remedy for the recovery of such claim, deals fully with the subject, and expressly repeals all former acts or parts of acts in conflict therewith.

4. ACTIONS GIVEN BY STATUTE—*Effect of Repeal of Statute.*—A right of action that did not exist at common law, but depends solely upon statute, falls with the repeal of the statute, without a

saving clause, unless reduced to judgment. If pending such action, before judgment, the law which gave the right to sue is repealed, without a saving clause as to pending suits, no further steps towards judgment can be taken in such suits.

5. STATUTES—*Construction—Exemptions.*—A statute exempting property from levy or sale is not to be construed strictly, but to carry out the obvious intent of the lawmaker.

6. STATUTES—*Repeal by Implication—Support of Insane Persons in State Hospitals—Act of 1906 Repealed by Act of 1908.*—Where a later statute was plainly intended to embrace the whole legislation on the subject to which it refers, and to be wholly substituted for all former statutes on the same subject, it is a legislative declaration that whatever is embraced in it shall prevail, and whatever is excluded is discarded and repealed. In the case at bar the act of 1908 was intended to cover the whole subject of recovery of claims for the support of lunatics confined in the State hospitals and to repeal the act of March 10, 1906 (Acts 1906, page 189), on the same subject.

Appeal from a decree of the Corporation Court of the city of Staunton, in the chancery cause of *Baldwin's Adm'r* v. *Brown and Others* wherein appellee filed its petition. Decree for the petitioner. Defendant appeals.

*Reversed.*

The opinion states the case.

*Peyton Cochran* and *H. J. Taylor,* for appellant.

*Timberlake & Nelson,* for appellee.

CARDWELL, J., delivered the opinion of the court.

Upon an appeal allowed to this court the case has to be considered and determined upon the record considered and passed upon by the court from whose decision the appeal is taken, and, therefore an agreement between counsel for the respective parties that in order to determine the rights of all parties interested in the fund in the cause it shall be heard and determined in this appellate court as if certain parties who were not parties in the court below were parties to the record, has to be ignored.

Nor will an agreement between counsel, as to the effect of a former decree entered in the cause, be considered.

J. Baldwin Brown was, on March 15, 1892, committed as an insane patient to the Western Lunatic Asylum, now by statute known as the Western State Hospital, at Staunton, Va. At the time of his commitment Brown owned no property. He was therefore entered as a State patient, free of charge, and had remained and was treated as such until the institution of this suit.

October 1, 1899, Mrs. Susan M. Baldwin died leaving a will in which she bequeathed a legacy of $2,864 to be held in trust for her afflicted nephew "until his health should be restored enough for him to have the care of same, the income from said fund to be applied to his clothes and comfort in every way."

In a pending cause the Corporation Court of the city of Staunton, by its decree of January 15, 1900, construing the will of Mrs. Susan M. Baldwin, held as follows: "That the trustee of J. Baldwin Brown, constituted by the said will of Susan M. Baldwin, deceased, take the remaining one-half of the estate passing under the said will, and that the said trustee hold this last-named estate in trust for the said J. Baldwin Brown while he shall continue insane, and apply the income derived from said estate to the maintenance and support of the said J. Baldwin Brown; that whenever the said J. Baldwin Brown shall become of sound mind, that this trust shall end, and that he, the said J. Baldwin Brown, shall take absolutely, without any restriction or limitation whatsoever, the *corpus* of the entire estate held for him as aforesaid."

With the view of subjecting the trust fund held for said Brown under the will of his aunt to the payment of the cost of his maintenance from the time of his commitment as an insane patient until the filing of said petition, amounting to $4,352.40, the Western State Hospital filed, on the 15th day of October, 1907, its petition asking that the income of the aforesaid trust fund be applied to the debt due the hospital;

and, if at the determination of the trust the debt should not have been satisfied, that the *corpus* of the fund should be subjected to the payment of the balance due thereon.

Upon a reference to Master Commissioner Jos. A. Glasgow of said petition and the answer of Brown's committee thereto, the comimssioner reported that, under the act approved March 10, 1906 (Acts 1906, p. 189), not only was the claim asserted by the hospital limited to five years next preceding the filing of its petition, making the debt due the hospital $1,164, but that under the further provisions of that act the debt claimed to be due the hospital could not be enforced at all.

The Corporation Court, upon the hearing of the cause upon the master's report and two exceptions thereto, sustained the report insofar as it found that the claim of the hospital was limited to the five years preceding the filing of its petition, but overruled the report as to an exemption of $2,000 to the estate of Brown, the lunatic, and as to the absolute exemption of the estate from payment of the claim of the hospital, because not sufficient for the support of an adult; and established the debt of $1,164 against the estate of Brown to be paid from the surplus income of the trust fund which remains after the payment of such necessary expenses as clothes, trips, tobacco, etc., furnished Brown. It decreed further, that if the debt is not satisfied at the death of Brown, the principal of the trust fund shall be subjected to the residue thereof. From that decree the committee of Brown obtained this appeal.

In our view of the case the only question requiring consideration is, What was the effect of the act of the General Assembly approved March 16, 1908 (Acts 1908, p. 687), upon the right of the State to enforce a claim for support and maintenance of an inmate in either of its hospitals established and maintained for the care and treatment of insane citizens of the State?

It seems not to be controverted that no such right existed at common law, in the absence of express contract, but that the

right of action against the estate of a lunatic for past expenses incurred in supporting him in one of the State's hospitals can exist only by statute imposing a personal liability for such support. The act of 1906, *supra,* gave the State no vested right, but merely provided a remedy or right of action against the estate of a lunatic committed to one of the hospitals of the State, in certain cases only. It provided expressly, as had not been theretofore, the various State hospitals with the means of collecting past-due charges for the maintenance and support of such patients as may have estates, but made this qualification: "except no claim shall be enforced or collected when the estate is worth less than two thousand dollars, nor where the estate is less than the amount necessary for the support of such insane person, or his or her immediate family, . . and no statute of limitation shall run against any such claim or debt; provided, that no action or suit shall be brought or maintained for any part of any claim which has been due and payable for five years or more."

Here appeared the avowed policy and intent of the legislature, that the several State hospitals might collect past due charges for the maintenance and support of patients in their respective hospitals in certain cases—first, where the estate of the lunatic exceeded $2,000, thus exempting that sum from liability in any event; and, second, where the estate was less than the amount necessary for the support of the insane person, or his or her immediate family, in either of which events no part of the estate was to be subjected to the claim of the hospital.

As observed, that statute only provided the means of collecting past-due charges for the maintenance and support of a patient in any of the several hospitals, and gave a right of action therefor upon certain conditions and limitations; but a different policy is unmistakably declared by the act of 1908, to-wit: that the estate or personal representative of a citizen of the State "committed to an insane asylum or hospital of the State" shall not be charged with any of the expenses attendant

upon his commitment, or for his maintenance in the hospital to which committed, thus putting all of that class of unfortunates in the State entirely upon the same footing.

The act of 1908 is as follows: "1. Be it enacted by the General Assembly of Virginia, that an act entitled 'an act to provide for the expense of removing, supporting and maintaining insane persons—how paid,' approved March tenth, nineteen hundred and six, be amended and re-enacted to read as follows:

"Sec. 1. Be it enacted by the General Assembly of Virginia, That no citizen of the State of Virginia, who shall be committed to an insane asylum of the State, his estate or personal representative, shall be charged with any of the expenses attendant therewith, or for his maintenance therein.

"Sec. 2. All acts and parts of acts in conflict with this act are hereby repealed."

The act declared in its title its purpose, viz.: "to amend and re-enact chapter 115, Acts of Assembly, 1906-7, entitled 'an act to provide for the expense of removing, supporting and maintaining insane persons—how paid,' approved March 10, 1906," and it deals with the whole subject of providing for the expense of removing, supporting and maintaining insane persons, how paid, and amends the only existing statute upon the subject, viz.: the act approved March 10, 1906, *supra,* and concludes with an unqualified repeal of all acts or parts of acts in conflict therewith.

Unless this statute be construed as declaring the purpose and intent of the legislature to be that thereafter no claim should be collected for the maintenance and support of insane persons committed, before or after the passage of the act, to an insane asylum or hospital of the State, then we would have two classes of inmates in these several hospitals, the one required to pay for their support and maintenance under the act of 1906, and the other required to pay nothing, as provided by the act of 1908, a situation not lightly to be attributed to the legislature.

It was plainly the intent of the legislature, in the act of 1908, to deal alike with all citizens of the State committed to either of the several hospitals established for their care and

comfort, to put them all in the same class, and where this is the case there is no ground for the charge of "denial of equal protection," enjoined by the Fourteenth Amendment to the United States Constitution. *Hayes* v. *Missouri,* 120 U. S., 68, 30 L. Ed. 578, 7 Sup. Ct. 350.

The effect of the statute was, as intended, to exempt the entire estate of a lunatic from sale, levy or charge for his support in an asylum or hospital for the insane citizens of the State, and not merely a part thereof.

"A statute exempting property from levy or sale is not to be construed strictly, but to carry out the obvious intent of the lawmaker." *Washburn* v. *Goodheart,* 68 Ill., 229, 13 L. R. A., 719; note 23 Am. & Eng. Ency. L., 399, and note 45 Am. Dec. 252.

It is very true that the words of the statute in question import future operation and effect, and it is also true that the rule is that statutes are always to be construed as prospective and not retroactive, as not intending to interfere with existing contracts, rights of action or vested rights, unless the intention that it shall so operate is expressly declared in the repealing act; but that rule has no bearing here. As remarked, the act of 1908 merely destroyed a remedy or right of action provided on behalf of the insane hospitals, which are institutions of the State, and there seems no room whatever to doubt that the State, through its legislative branch of government, had the right, the unrestricted power, to take away or discontinue the remedy or right of action provided in its own behalf in the act of 1906; and this was done by the act of 1908, fairly construed, and by the express repeal of all acts or parts of acts in conflict therewith, i. e., all acts or parts of acts theretofore enacted dealing with the subject legislated upon in the last act.

What would have been the status of the claim asserted in this case had it been carried into judgment against Brown, the lunatic, or his estate, before the passage of the act of 1908, is a question that need not be considered, as the act took effect before the entry of the decree here complained of.

"The rights depending on a statute and still inchoate, not perfected by final judgment or reduced to possession, are lost by repeal or expiration of the statute." Sutherland on Stat. Constr., sec. 163.

See also *Curran v. Ownes,* 15 W. Va., 108, in which the opinion says: "We think it well settled that the general rule is that when an act of the legislature is repealed it must be considered, except as to transactions past and closed, as if it never existed (*Ex parte McCardle,* 7 Wall., 514, 19 L. Ed. 264), and that a right of action that did not exist at common law, but depends solely upon statute, falls with the repeal of the statute, without a saving clause, unless that right has been carried into judgment. . . . That if pending such action before there is a judgment the law which gave the right to bring the suit is repealed, without a saving clause as to suits pending, no further steps towards judgment can be taken in such suits."

The act of 1908 is to amend and re-enact the act of 1906 so as "to read as follows:" and both in its title and in the enacting clause, refers directly to the act of 1906, and makes it wholly the subject of the amendment. Not only was it manifest that the later act was intended to be a repeal of all parts and provisions of the statute amended which were omitted from it, but it expressly so declared.

As said in the opinion by Riely, J., in *Somers' Case,* 97 Va., 759, 33 S. E. 381, a case in point here: "Where the later statute was plainly intended to embrace the whole legislation on the subject to which it refers, and to be wholly substituted for all former statutes on the same subject, it must be held to be a legislative declaration that whatever is embraced in it shall prevail and whatever is excluded is discharged and repealed." See also the authorities cited in that case, and *Curran v. Ownes, supra.*

We are of opinion that the decree appealed from in this case is erroneous, and it will be annulled, and this court will enter the decree that the Corporation Court of the city of Staunton should have entered, dismissing appellee's petition.

*Reversed.*